# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| LAURA BRALEY, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br>v.<br><br>MASHNOON AHMED; CHRISTOPHER ANGELES; BRANDECO, L.L.C. d/b/a BrandNex.com; CASAD COMPANY d/b/a/ Totally Promotional; CUSTOM WRISTBANDS INC. d/b/a Kulayful Silicone Bracelets, Kulayful.com, Speedywristbands.com, Promotionalbands.com, Wristbandcreation.com, and 1inchbracelets.com; AKIL KURJI; AZIM MAKANOJIYA; NETBRANDS MEDIA CORP. d/b/a 24hourwristbands.com and imprint.com; and ZAAPPAAZ, INC. d/b/a WB Promotions, Inc., Wrist-Band.com, and Customlanyard.net,<br><br>*Defendants.* | Civil Action No.:<br><br><br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Laura Braley ("Plaintiff"), on behalf of herself and all other similarly-situated individuals and entities who have purchased customized promotional products directly from one or more of the above-named corporate Defendants (four of which are controlled by the above-named individual Defendants), brings this action for treble compensatory damages and injunctive relief under the antitrust laws of the United States, against the Defendants, demanding a trial by jury on those issues so triable.  For her Complaint against Defendants, Plaintiff alleges the following based upon personal knowledge as to matters relating to herself, and upon information and belief as to all other matters:

## NATURE OF THE CASE

1.  The five corporate Defendants Brandeco, L.L.C. ("Brandeco"), Casad Company ("Casad"), Custom Wristbands Inc. ("Custom"), Netbrands Media Corp. ("Netbrands"), and Zaappaaz, Inc. ("Zaappaaz") are online vendors of customized promotional products, including wristbands and lanyards.  The four individual Defendants Mashnoon Ahmed, Christopher Angeles, Akil Kurji, and Azim Makanojiya are controlling officers of corporate Defendants Netbrands, Custom, Brandeco, and Zaappaaz, respectively.  This case involves a price-fixing conspiracy in which representatives of the corporate Defendants, including the four individual Defendants, used text messages, instant messages, and in-person meetings to fix the prices of customized promotional products.

2.  An investigation into price fixing in the online customized promotional products industry by the Department of Justice's Antitrust Division's Washington Criminal I Section, with the assistance of the Federal Bureau of Investigation's Houston Field Office, is ongoing.

3. That investigation has so far resulted in the prosecutions of Defendants Zaappaaz, Makanojiya, Custom, and Angeles, all of whom pled guilty to conspiring with other customized promotional products companies to fix prices.

4. That investigation has also suggested the involvement of Defendants Ahmed, Brandeco, Casad, Kurji, and Netbrands in the price-fixing conspiracy.

5. Zaappaaz and its president Makanojiya pled guilty in the Southern District of Texas to violating the Sherman Act by conspiring with other customized promotional products companies to fix prices. Zaappaaz agreed to pay a $1.9 million fine as part of the plea deal.

6. The Department of Justice's August 7, 2017, announcement of Zaappaaz and Makanojiya's guilty pleas stated: "[T]he conspirators attended meetings and communicated in person and online. The investigation has revealed that the conspirators used social media platforms and encrypted message applications, such as Facebook, Skype and Whatsapp, to reach and implement their illegal agreements. Specifically, the defendants and their co-conspirators agreed, from as early as 2014 until June 2016, to fix the prices of customized promotional products sold online, including wristbands and lanyards."[1]

7. Custom and its top executive Angeles pled guilty in the Southern District of Texas to violating the Sherman Act by conspiring with other customized promotional products companies to fix prices. Custom agreed to pay a $409,342 fine as part of the plea deal.

8. The Department of Justice's August 22, 2017, announcement of Custom and Angeles' guilty pleas stated: "[T]he conspirators attended meetings and communicated in person and online. The investigation has revealed that the conspirators used text messaging and other

---

[1] *E-Commerce Company and Top Executive Agree to Plead Guilty to Price-Fixing Conspiracy for Customized Promotional Products*, THE UNITED STATES DEPARTMENT OF JUSTICE (August 7, 2017), https://www.justice.gov/opa/pr/e-commerce-company-and-top-executive-agree-plead-guilty-price-fixing-conspiracy-customized.

3

online messaging platforms to reach and implement their illegal agreements.  Specifically, the defendants and their co-conspirators agreed, from as early as June 2014 until June 2016, to fix the prices of customized promotional products sold online, including wristbands."[2]

9. Plaintiff, like the members of the Class she seeks to represent, purchased customized products from the corporate Defendants, including customized wristbands from Zaappaaz' website Wrist-Band.com.  There are likely at least thousands of similarly-situated direct purchasers of customized promotional products who paid artificially-inflated prices due to Defendants' unlawful anticompetitive conduct.  The Class includes all purchasers of customized promotional products from the corporate Defendants from June 2014 through the present, or at least until such time as the anticompetitive conduct is found to have ceased.

10. Defendants Brandeco, Casad, and Netbrands are co-conspirators of Zaappaaz and Custom.  Defendant Kurji controls Brandeco and is CEO of its operating business BrandNex.com, and Defendant Ahmed is CEO of Netbrands.

11. The anticompetitive conduct alleged herein constitutes a *per se* unreasonable restraint of trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. §1.  Defendants' conduct has had the purpose and effect of allowing them to harm competition and consumers by fixing prices, and has enabled them to charge supracompetitive prices to Plaintiff and other members of the Class for customized promotional products.

## JURISDICTION AND VENUE

12. The claim set forth in this Complaint arises under Section 1 of the Sherman Act (15 U.S.C. § 1), and Plaintiffs seek treble damages pursuant to Section 4 of the Clayton Act (15

---

[2] *Second E-Commerce Company and Its Top Executive Agree to Plead Guilty To Price-Fixing Conspiracy in Customized Promotional Products Industry*, THE UNITED STATES DEPARTMENT OF JUSTICE (August 22, 2017), https://www.justice.gov/opa/pr/second-e-commerce-company-and-its-top-executive-agree-plead-guilty-price-fixing-conspiracy.

4

U.S.C. § 15(a)).  This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1337(a).

13. Venue is proper in the Southern District of Texas under 28 U.S.C. §1391(b) and 15 U.S.C. § 22 because (a) Defendants reside, transact business, committed an illegal or tortious act, have an agent, and/or are found in this District, and (b) a substantial portion of the events described below have been carried out in this District.

14. This Court has personal jurisdiction over each Defendant because each Defendant transacted business within, and is subject to personal jurisdiction within, the Southern District of Texas.  Each of the corporate Defendants sells custom promotional products to consumers located in the Southern District of Texas.

15. At all material times, the corporate Defendants sold custom promotional products to customers across the United States, operating in a continuous and uninterrupted flow of commerce across state lines.  Defendants' conduct alleged herein has substantially affected interstate commerce.

## PARTIES

16. Plaintiff Laura Braley is an individual who resides in Virginia Beach, VA. During the applicable Class Period, Braley purchased customized promotional products from one or more Defendants.

17. Defendant Brandeco, L.L.C. ("Brandeco") is a Texas limited liability company with its principal place of business at 8181 Commerce Drive, Suite 700, Houston, TX 77036. Brandeco operates the website BrandNex.com and does business under that name, selling customized promotional products nationwide.

18. Defendant Akil Kurji controls Brandeco, is CEO of BrandNex.com, and is domiciled in Texas.

19. Defendant Casad Company, Inc. ("Casad") is an Ohio corporation with its principal place of business at 450 South Second Street, Coldwater, OH 45828. The founder and president of Casad is Thomas Casad. Casad operates the website totallypromotional.com. Casad sells customized promotional products nationwide.

20. Defendant Custom Wristbands Inc. ("Custom") is a California corporation with its principal place of business at 4416 W. Verdugo Ave., Burbank, CA 91505. Custom operates websites under the names Kulayful Silicone Bracelets, Kulayful.com, Speedywristbands.com, Promotionalbands.com, Wristbandcreations.com, and 1inchbracelets.com. Custom sells customized promotional products nationwide.

21. Defendant Christopher Angeles is the owner and CEO of Custom and is domiciled in California.

22. Defendant Netbrands Media Corp. ("Netbrands") is a Texas corporation with its principal place of business at 14550 Beechnut St., Houston, TX 77083. Netbrands operates websites under the names 24hourwristbands.com and imprint.com. Netbrands sells customized promotional products nationwide.

23. Defendant Mashnoon Ahmed is the CEO of Netbrands and is domiciled in Texas.

24. Defendant Zaappaaz, Inc. ("Zaappaaz") is a Texas corporation with its principal place of business at 1305 El Camino Village Dr., Houston, TX 77058. Zaappaaz operates websites under the names WB Promotions, Inc., Wrist-Band.com, and Customlanyard.net. Zaappaaz sells customized promotional products nationwide.

25. Defendant Azim Makanojiya is the president of Zaappaaz and is domiciled in Texas.

## CLASS ALLEGATIONS

26. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of herself and the following class (the "Class"):

> All persons and entities in the United States that directly purchased customized promotional products from Brandeco, Casad, Custom, Netbrands, or Zaappaaz at any time during the period from at least June 2014 until the conduct challenged in this Complaint ceases ("Class Period").

27. Members of the Class are so numerous that joinder is impossible. The Class includes at least thousands of consumers.

28. There are numerous questions of law and fact common to the class, including, without limitation:

   a. which Defendants were involved in the price-fixing conspiracy, and at what times;

   b. whether Defendants colluded to set the price of customized promotional products in the United States;

   c. whether Defendants' conduct raised the price of customized promotional products in the United States, and by how much;

   d. whether Defendants' conduct as alleged herein constitutes a *per se* violation of the antitrust laws; and

   e. whether, and to what extent, Defendants' conduct caused direct purchasers of customized promotional products to pay supracompetitive prices, and thereby, to suffer antitrust injuries.

These, and other common questions of law and fact, predominate over any questions affecting only individual Class members.

29. Plaintiff's claims are typical of the claims of the Class, because all Class members suffered antitrust injuries in the same way as a result of Defendants' wrongdoing, and the claims of each Class member arise out of the same essential facts and are based on the same legal theories.

30. Plaintiff will fairly and adequately represent and protect the interests of the Class.

31. Plaintiff has retained counsel experienced in class action antitrust litigation, and Plaintiff has no interest in this litigation that conflicts with the interests of the other members of the Class.

32. A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty for the Court in managing the claims of the Class that would preclude class certification.

**OVERVIEW OF THE CUSTOMIZED PROMOTIONAL PRODUCTS INDUSTRY**

33. According to the Promotional Products Association International, the promotional products industry had total US sales of $20.8 billion in 2015.[3]

34. Common promotional items include pens, calendars, T-shirts, coffee mugs, key chains, badge holders, wristbands, and lanyards.

35. Businesses often use customized promotional items by giving them out at trade shows to advertise the business, giving them to customers to further brand loyalty, or giving them to their own employees as gifts.

---

[3] *Promotional Products Sales Hit Record $20.8 Billion In 2015*, PROMOTIONAL PRODUCTS ASSOCIATION INTERNATIONAL, http://pubs.ppai.org/ppb-newslink/promotional-products-sales-hit-record-208-billion-in-2015/ (last visited October 3, 2017).

36. Customized promotional items are also often used by fans of various musicians, movies, and television series to feature the name or image of a popular performer or character.

37. Advances in manufacturing technology, and the low cost of manufacturing in China and shipping to the United States, allows for the manufacture and distribution of customized items at a low cost.

38. In the absence of collusion between the Defendants, customized products would be sold to consumers at a low price. Factors including competition between vendors, the low cost of manufacturing and shipping, and the ease of ordering online and comparing offers from different vendors, would keep prices to a low level.

39. Defendants' actions resulted in supracompetitive prices and profits at the expense of consumers of promotional products.

## DEFENDANTS EXERCISE MARKET POWER

40. Defendants' horizontal price fixing is a *per se* violation of Section 1 of the Sherman Act. Therefore, Plaintiff is not required to define a relevant market.

41. Alternatively, if the Court determines that Plaintiff's Sherman Act claim cannot proceed under a theory of *per se* horizontal price fixing, Defendants' anticompetitive conduct and agreements constitute a violation of the Sherman Act under the "rule of reason." In that case, the relevant market is the market for online sale of customized promotional products to consumers in the United States.

42. Netbrands' site 24hourwristbands.com claims that Netbrands is the "largest manufacturer of custom wristbands in the world."[4]

43. Zaappaaz' site Wrist-Band.com claims to be the "largest wristband supplier in USA."[5]

---

[4] 24HOURWRISTBANDS.COM, https://24hourwristbands.com/ (last visited October 3, 2017).

44. Casad's site TotallyPromotional.com claims to be "America's most popular Internet source for imprinted promotional products…"[6]

45. Brandeco's site BrandNex.com claims that BrandNex.com is "one of the largest manufactures of promotional products in the United States!"[7]

46. On information and belief, Brandeco, Casad, Custom, Netbrands, and Zaappaaz collectively have high market share in the customized promotional products industry.

47. There are no reasonably available substitutes for customized promotional products that are commercially ordered, designed, manufactured, and shipped. If a customer could even find a local business willing to create customized promotional products, they would be far more expensive than those mass produced using modern high-technology equipment.

48. The corporate Defendants sell customized promotional products at prices well in excess of marginal costs and the competitive price, and therefore have enjoyed artificially high profit margins, especially when compared with online retailers of other types of mass-produced consumer goods.

49. Defendants privately communicated and agreed to fix prices in order to artificially inflate the price of customized promotional products above competitive levels.

## HISTORY OF THE PRICE-FIXING SCHEME

50. In 2004, cycling champion Lance Armstrong's cancer charity Livestrong Foundation launched a yellow silicone gel wristband with the imprint "LIVESTRONG"[8], which would eventually sell over 80 million wristbands.[9]

---

[5] WRIST-BAND.COM, https://www.wrist-band.com/wristband-home (last visited October 3, 2017).
[6] *About us*, TOTALLY PROMOTIONAL, https://www.totallypromotional.com/about-us.html (last visited October 3, 2017).
[7] *About us*, BRANDNEX.COM, http://www.brandnex.com/themeb/aboutus.php (last visited October 3, 2017).
[8] Connor Simpson, *Lance Armstrong Killed the Livestrong Bracelet*, YAHOO NEWS (May 28, 2013) https://www.yahoo.com/news/lance-armstrong-killed-livestrong-bracelet-165735338.html.

51. In 2007, Defendant Makanojiya, then a student at the University of Houston, was visiting a trade show in China when he saw how customized silicone wristbands could be mass produced. Inspired by the Livestrong wristbands, and not aware of any website in the US that allowed consumers to design their own customized wristbands, he created his own website for that purpose, Wrist-Band.com.[10]

52. In 2010, Defendant Netbrands sued Zaappaaz, Makanojiya, and several of Makanojiya's family members who were involved with Zaappaaz, alleging that Makanojiya, his family members, and a company they hired in India submitted fake orders on Netbrands' website in order to figure out how its order process worked so that they could duplicate it on Zaappaaz' site, and then offer similar products and services on Zaappaaz' site. Netbrands' complaint alleged that Zaappaaz copied large portions of its website exactly, including images, and offered the same or substantially similar services and products at prices 30-40% less than Netbrands' prices.[11]

53. The case was settled in 2011[12], providing an opportunity for these former competitors to instead collude and fix prices.

54. From at least 2014 through at least June 2016, Zaappaaz personnel, and specifically Makanojiya, attended meetings and used online communications, including Facebook, Skype, and Whatsapp, with other Defendants in order to fix the prices of customized promotional products.

---

[9] Christopher Baker, *Spin: Lance Armstrong's confession and Livestrong's future*, THE CONVERSATION, (January 19, 2013), https://theconversation.com/spin-lance-armstrongs-confession-and-livestrongs-future-11616.
[10] *Azim Makanojiya's Wrist-Band.com top seller of silicon wrist band in US*, THE ECONOMIC TIMES (December 30, 2014), http://economictimes.indiatimes.com/magazines/panache/azim-makanojiyas-wrist-band-com-top-seller-of-silicon-wrist-band-in-us/articleshow/45684563.cms.
[11] *Lightbeam, Inc. and Net Brands Media Corp. v. Zaappaaz, LLC d/b/a Wrist-Band.com et al.*, No. 10- 405 (S.D. TX. filed Feb. 2, 2010). [Lightbeam was Netbrands' parent company at the time of the litigation.]
[12] *Lightbeam, Inc.*, ECF Nos. 26-31.

55. From at least June 2014 through at least June 2016, Custom personnel, and specifically Angeles, attended meetings and communicated in person and online, using text messaging and other online messaging platforms in order to fix the prices of customized promotional products.

56. In January 2016, a Houston-based wristband seller (the "Whistleblower") was approached through text messages and Facebook messages by Mashnoon Ahmed of Netbrands and Akil Kurji of Brandeco about joining the cartel. Kurji told the Whistleblower that Brandeco, Custom, Netbrands, and Zaappaaz all agreed to match one another's prices rather than compete. The Whistleblower notified the government about the cartel, and agreed to wear a wire to record conversations with Ahmed, Kurji, and Makanojiya.

57. In recorded conversations with the Whistleblower, Ahmed, Kurji, and Makanojiya discussed pricing, their private Whatsapp group that was used to discuss pricing, and the restaurants where they would meet to agree on pricing.

58. Based on information obtained in the investigation, the FBI had reason to believe that Casad was involved in the cartel. In July 2017, the FBI investigated Casad's offices for seven hours.

59. In August 2017, Zaappaaz and Makanojiya pled guilty in the Southern District of Texas to violating the Sherman Act by conspiring with other customized promotional products companies to fix prices. Zaappaaz agreed to pay a $1.9 million fine as part of the plea deal.

60. In August 2017, Custom and Angeles pled guilty in the Southern District of Texas to violating the Sherman Act by conspiring with other customized promotional products companies to fix prices. Custom agreed to pay a $409,342 fine as part of the plea deal.

## HARM TO COMPETITION DUE TO THE CONSPIRACY

61.     The anticompetitive conduct described in this Complaint enabled Defendants to maintain prices above competitive levels, to the detriment of Plaintiff and other members of the Class.  This harm to the Plaintiff and other Class members, in the form of paying artificially inflated prices for customized promotional products, constitutes cognizable antitrust injury and harm to competition under the antitrust laws.

62.     There are no legitimate procompetitive justifications for the anticompetitive conduct alleged in this Complaint, and even if there were, there are less restrictive means of achieving those purported procompetitive effects.  To the extent that Defendants' anticompetitive conduct or any aspect of their conspiracy has any cognizable procompetitive effects, they are substantially outweighed by the anticompetitive effects.

## ANTITRUST INJURY TO PLAINTIFF AND MEMBERS OF THE CLASS

63.     During the Class Period, Plaintiff and members of the Class purchased customized promotional products from Defendants.  As a result of Defendants' anticompetitive conduct alleged herein, members of the Class paid Defendants prices for customized promotional products that were inflated above competitive levels during and throughout the Class Period.

64.     If Defendants had not conspired with one another to fix prices, Plaintiff and members of the Class would have paid substantially lower prices for customized promotional products during and throughout the Class Period.

65.     Because Defendants were successful in price fixing, Plaintiff and members of the Class have sustained, and continue to sustain, substantial losses in the form of artificially inflated prices paid to Defendants.  The full amount of such damages will be calculated after discovery and upon proof at trial.

66. Injury to Plaintiff and members of the Class was a direct and foreseeable result of Defendants' anticompetitive conduct.

67. On information and belief, Defendants' anticompetitive conduct is continuing, and so are the overcharges suffered by Plaintiff and the Class caused by Defendants' conduct.

## CLAIM FOR RELIEF

## COUNT I

### Violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1: Unlawful Agreements in Unreasonable Restraint of Trade

68. Plaintiffs incorporate by reference the preceding allegations.

69. As set forth above, in violation of §1 of the Sherman Act, Defendants entered into agreements with one another to fix the prices of customized promotional products. This horizontal price-fixing conspiracy was *per se* unlawful, or in the alternative, was unlawful under the rule of reason.

70. Each individual and corporate Defendant committed at least one overt act, such as arranging with a competitor to set the price of customized promotional products, to further the conspiracy alleged herein.

71. Plaintiff and members of the Class have been injured in their business or property by Defendants' antitrust violations. The injury to Plaintiff and the Class consists of paying prices for customized promotional products inflated above competitive levels. Such injury, in the form of overcharges, is of the type the antitrust laws were designed to prevent, and flows directly from Defendants' unlawful conduct.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following

    a. Certification of the Class proposed in this Complaint.

    b. Judgment in favor of themselves and the Class they seek to represent and against Defendants, and damages, measured as the overcharges that Plaintiff and other members of the Class paid as a result of Defendants' anticompetitive conduct, trebled;

    c. Pre- and post-judgment interest;

    d. Injunctive relief to prevent further anticompetitive conduct; and

    e. Costs of suit, including reasonable attorneys' fees.

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all the claims asserted in this Complaint that are so triable.

Dated: October 12, 2017                                          Respectfully Submitted,

                                                                       /s/ *Miranda Y. Jones*
                                                                       Miranda Y. Jones
                                                                       mjones@hpcllp.com
                                                                       Heim, Payne & Chorush, LLP
                                                                       Fed ID No.  1147635
                                                                       State Bar No. 24065519
                                                                       1111 Bagby, Suite 2100
                                                                       Houston, Texas 77002
                                                                       Telephone: (713) 221-2000
                                                                       Facsimile: (713) 221-2021